Wyly, J.,
dissenting. I am satisfied that the notarial act from Fairbanks & Gilman to the New Orleans Mutual Insurance Company was not intended to be a sale.of the machinery. There was no intention to buy or to sell in that contract. Its real purpose was to secure the New Orleans Mutual Insurance Company for a loan to Fairbanks & Gilman, and the real contract was disguised nnder the form of a sale.
The machinery was personal property and was not actually delivered ; there was not a moment of time that this property ceased to be in the possession of Fairbanks & Gilman.
As to plaintiffs there was no sale of this personal property, because there was no delivery; the notarial act added nothing to the validity of the contract. It is the real intention of the parties that determines the character of the contract, regardless of the form under which they have chosen to disguise it. Fairbanks & Gilman wished to secure the insurance company in a loan of $25,000. They sold the machinery which they had in a leased building used by them as a sugar refinery and transferred the lease; in the same act they released the building and the machinery and reserved the right to redeem the property. They continued the operation of the refining without any change of possession, except what appeared merely on paper.
The plaintiffs, creditors of Fairbanks & Gilman, ought not to be evaded in the pursuit of their debtors by such a shallow device.
Can any one believe that the insurance company, unauthorized and prohibited by law from carrying on a commercial business, really intended to buy the machinery of Fairbanks & Gilman; to lease the. house for the purpose of engaging in the commercial business of a sugar refinery, and before completing the act changed their mind, concluded not to go into the business, but would release the house to *454 Fairbanks & Gilman and let them keep the machinery with the right of redemption? Why should the insurance company, prohibited from carrying on a refinery, lease from Fairbanks & Gilman their sugar refinery and in the same act release it to them, unless their real purpose was to get an apparent or constructive possession of the machinery remaining in the actual possession of Fairbanks & Gilman, and thereby obtain a title to this personal property as a security for the loan which they made to Fairbanks & Gilman ?
The law ought not to bo circumvented, and the sale of personal property without actual delivery ought not to be validated by an apparent but fictitious delivery, concocted by the ingenuity of debtors to evade the pursuit of their creditor. I can not believe that Fairbanks & Gilman really intended to sell their machinery and retire from the business of operating a sugar refinery; on the contrary, the record teems with evidence satisfying me that their purpose was to extend their business and operate upon a larger scale. For that purpose they immediately expended large sums in buying more machinery; and to aid them in a more extensive operation of the refinery, the insurance company actually loaned the money on the security of a fictitious sale of the machinery described in the notarial act.
In this litigation the insurance company not only claim the machinery described in the notarial act, but they claim the title of all the machinery subsequently bought by Fairbanks & Gilman, worth at least twenty-five thousand dollars. They ought not, under the disguise of a sale, to obtain a security on personal property which the law does not authorize; they ought not to succeed in their attempt to rescue all the machinery, the personal property of Fairbanks & Gilman, from the seizure of their judgment creditors, the plaintiffs herein.
I therefore dissent in this case.